IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

STEVE R. JONES,                    )
                                   )
    Plaintiff,                     )
                                   )
VS.                                )    CASE NO. _____
                                   )    JURY DEMAND
JOHNSON CONTROLS, INC.,            )
                                   )
    Defendant.                     )

## COMPLAINT

Comes now, Plaintiff, Steve R. Jones, who files this Complaint against Defendant, Johnson Controls, Inc., would state as follows:

### THE PARTIES:

1. Plaintiff has been a resident of Cannon County, Tennessee at times relevant to this action.

2. Defendant is a non-Tennessee corporation which at times relevant to this action has maintained a car parts production facility in Rutherford County, Tennessee.

### JURISDICTION:

3. This Court has jurisdiction of Plaintiff's Age Discrimination in Employment Act (ADEA) claim pursuant to 29 U.S.C. §626 and because a federal question is presented thereby invoking 28 U.S.C. §1331.

1

## VENUE:

4. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2) because the acts giving rise to this litigation occurred within the boundaries of the Middle District of Tennessee.

## ADMINISTRATIVE HISTORY:

5. Plaintiff filed a Charge of Discrimination with the EEOC on or about December 14, 2013.

6. A Notice of Right to Sue issued to Plaintiff from the EEOC on May 20, 2015.

7. This Complaint is being filed within 90 days of Plaintiff's receipt of the Notice of Right to Sue and therefore is timely.

## FACTS:

8. Plaintiff's date of birth is April 24, 1953.

9. Plaintiff while technically employed by an employment agency company known as Aerotek was assigned to work at Defendant's automobile parts production facility in Murfreesboro, Rutherford County, Tennessee in November of 2012.

10. When assigned to Defendant's Murfreesboro automobile parts production facility, Plaintiff was given a management position.

11. Prior to going to work at Defendant's Murfreesboro automobile parts production facility in November of 2012, Plaintiff had substantial supervisory/management experience in production work in general and automotive production in particular.

12. At the time Plaintiff began working at Defendant's Murfreesboro automobile parts production facility, he was told he was essentially being placed on a six-month trial period, and that he would either be hired as a full-time employee of Defendant at the end of the six months or terminated at that time.

2

13. While working at Defendant's Murfreesboro automobile parts production facility, he was supervised by employees of Defendant.

14. Until he was terminated, Plaintiff was never the subject of any disciplinary or adverse employment actions while working at Defendant's Murfreesboro automobile parts production facility.

15. Plaintiff's performance while working at Defendant's facility was exemplary.

16. At the time he was terminated, Plaintiff was earning $25.00 an hour, and he worked substantial overtime so that his average weekly wage was $1,210.42.

17. In July of 2013, Plaintiff was told that Johnson Controls needed a resume from him but production of the resume was a mere formality.

18. A few days after producing his resume to Defendant, Plaintiff was told he had to take and pass a test. The test was quite simple and Plaintiff is certain he passed it, but he was told by Defendant's second shift superintendent that he had not scored the requisite 80% on the test.

19. Plaintiff was then asked by Defendant's management employee, Ms. Baker, if he planned to continue working for Defendant and he replied: "Yes" and "you'll have to tell me when to leave."

20. Plaintiff then took the test again and was told that he had passed.

21. One of the jobs for which Plaintiff was applying with Defendant in the summer of 2013 was the same job he had been doing for six months. Thus, he was actually applying for the job he was already performing in an exemplary fashion.

22. During the time Plaintiff was applying to become a permanent Johnson Controls' employee, Defendant had several supervisory positions to fill.

23. Plaintiff has more formal education than any of the employees Defendant promoted to supervisory positions in 2013.

24. The number of persons Defendant promoted to supervisory positions during 2013 were approximately five to seven.

25. None of the persons promoted had any prior supervisory or management experience.

26. All of the persons who were promoted by Defendant to supervisor/management experience in 2013 were under the age of 40.

27. The person who was promoted to the job Plaintiff had been doing and sought is Shawn Jones who is believed to be in his mid-30's. Mr. Jones had previously worked in the shipping department as a non-management employee.

28. Some of the persons selected by Defendant for management/supervisory positions did not meet the qualifications listed on the job description.

29. Plaintiff met all of the qualifications for the supervisor/management jobs which he sought from Defendant.

30. On December 4, 2013, Plaintiff received a call at home from an Aerotek employee and was told that Johnson Controls had decided to "go in another direction" and that his employment for Aerotek and Johnson Controls was ending.

31. At the time Plaintiff was terminated on December 4, 2013, he had recently supervised and completed the set-up of a new production line. Starting a new production line is always a difficult process, but Plaintiff had worked through it and had two lines running well by the time he was terminated.

32. The position for which Plaintiff applied, and was actually doing as an Aerotek employee, would have paid $3.00 per hour more than the $25.00 Plaintiff was earning, and he would also have had employment benefits from the date of hire which he did not have while working as an Aerotek employee.

33. If Plaintiff had been hired by Defendant, he would also have worked substantial amounts of overtime.

34. Defendant allowed Plaintiff to continue working until he got the newly started line of vehicular seat production running smoothly.

35. In addition to the loss of back and front pay, Plaintiff experienced substantial mental anguish, humiliation and embarrassment as the proximate result of not being hired and being terminated by Defendant.

36. Plaintiff was the most qualified person for any of the supervisory positions that were made available by Defendant during the relevant time period and for which he applied.

37. Not only did Plaintiff fail to get hired, he was effectively terminated as Aerotek had no other position available to offer him.

## AGE DISCRIMINATION CLAIM:

38. Plaintiff incorporates by reference paragraphs 1 through 37 as if fully re-alleged herein.

39. Plaintiff was Defendant's "employee" for ADEA purposes as "employee" is defined at 29 U.S.C. §630(f).

40. Defendant's is Plaintiff's "employer" for ADEA purposes as "employer" is defined at 29 U.S.C. §639(b).

5

41. Aerotek, at times relevant to this litigation, has been an "employment agency" as provided at 29 U.S.C. §630(c).

42. By virtue of his age, Plaintiff was a member of a protected class as provided by 29 U.S.C. §631(a).

43. Plaintiff was subjected by Defendant to the adverse employment action of having his application for employment denied which also meant the termination of his employment.

44. All of the persons who sought and obtained management/supervisory positions with Defendant during the time Plaintiff sought such positions were substantially younger than Plaintiff and under the age of 40.

45. The person who replaced Plaintiff was under the age of 40.

46. Defendant's refusal to hire Plaintiff, and to discharge him as a de facto employee, adversely affected his compensation and the terms, conditions and privileges of his employment.

47. Defendant's denial of Plaintiff's application for employment and its termination of him, violates the ADA at 29 U.S.C. §631(a) because the adverse employment actions taken were based on Plaintiff's age.

48. Plaintiff's age was the "but for" and a determinative cause for Defendant's denial of his application for employment and its termination of him.

49. At all relevant times, Plaintiff was qualified to perform all aspects of all of the management/supervisory positions for which he applied.

50. Plaintiff seeks the following damages and relief for Defendant's violation of the ADEA:

   a. Back pay with interest thereon;

   b. The value of lost employment benefits with interest thereon;

6

Case 3:15-cv-00872   Document 1   Filed 08/11/15   Page 6 of 7 PageID #: 6

c. Damages for humiliation, embarrassment and mental anguish;

d. Liquidated damages;

e. Reinstatement to the position he held prior to his termination with the reinstatement including Plaintiff's becoming an employee of the Defendant, with all the compensation, benefits, rights and privileges he would have if he had been hired by Defendant;

f. Punitive damages;

g. Front pay in the event reinstatement is not ordered.

Respectfully submitted,

*[signature]*

R. STEVEN WALDRON, BPR #2767
BENJAMIN L. PARSLEY, III, BPR #26888
Attorneys for Plaintiff
WALDRON, FANN & PARSLEY
202 W. Main Street
Murfreesboro, TN 37130
(615) 890-7365; fax (615) 848-1658
e-mail: arlenesmith@comcast.net
e-mail: bpars3@comcast.net

*[signature] Benjamin L. Parsley III By [signature]*